UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK JUNNIE THOMPSON,

    Plaintiff,

v.                                      Case No. 1:13-cv-67
                                          Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                  /

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on June 20, 1970 (AR 121).[1] He alleged a disability onset date of February 1, 2006 (AR 121). Plaintiff completed one year of college and received special job training in plastic injection (AR 139). He had previous employment as a cook and a line worker in a factory (AR 135). Plaintiff identified his disabling conditions as blind in right eye with a cataract forming in the eye (AR 134). Due to this condition, plaintiff is unable to focus and does not have a full range of perception (AR 134). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on April 29, 2009 (AR 16-23). Plaintiff appealed to the federal court, which reversed and remanded the decision pursuant to sentence four of 42 U.S.C. § 405(g) "to reevaluate both plaintiff's credibility with respect to eye pain and his RFC with respect to his

---

        [1] Citations to the administrative record will be referenced as (AR "page #").

limitations for working in a lighted environment." *Jack J. Thompson v. Commissioner of Social Security*, No.1:10-cv-2 (Order and Judgment Approving Report and Recommendation) (Feb. 25, 2011) (docket no. 14). A new hearing was held on September 6, 2011 (AR 328-93). The ALJ issued a *de novo* decision on October 12, 2011, finding that plaintiff was not disabled (AR 309-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

2

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 1, 2006 and that he met the insured status requirements under the Act through December 31, 2010 (AR 311). Second, the ALJ found that plaintiff had a severe impairments of: status post penetrating keratoplasty of the right eye, photophobia and headaches; mild keratoconus of the left eye; sleep apnea; hypertension; obesity with mildly restrictive lung capacity related to obesity; glaucoma; myofascial back pain; depression; and alcohol abuse (AR 311). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 312). Specifically, plaintiff did not meet Listings 1.04 (disorders of the spine), 2.04 (loss of visual efficiency), or 12.04 (affective disorders) (AR 311).

The ALJ decided at the fourth step that:

[T]he claimant has the residual functional capacity to perform a reduced range of medium exertion work as defined in 20 CFR 404.1567(c) and 416.967(c) of the Regulations that does not require climbing ladders, ropes or scaffolds, or standing rapidly from a seated position, or more than occasional crouching and crawling.

Claimant can frequently balance, stoop, and kneel. Claimant has limited depth perception, and limited near and far acuity, and is precluded from reading fine print, but he can read ordinary newspaper or book print, can view a computer screen, can determine differences in shape and color of objects, can perform activities such as to sort, handle or use paper files. The claimant must avoid all exposure to unprotected heights and dangerous, moving machinery. He cannot work on an assembly line when objects come from right to left, he must be able to wear a patch over his right eye, and retains no functional use of the right eye. He must avoid concentrated exposure to temperature extremes (extreme heat and cold). He is limited to unskilled work that can be learned in 30 days or less. There is no reduction in the ability to work a full 40-hour workweek and no requirement for an increase in the number or length of break periods.

(AR 313-14). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 319).

At the fifth step, the ALJ determined that plaintiff could perform a range of medium work in the national economy (AR 320). The work included the following jobs in the regional economy (defined as the State of Michigan): hotel housekeeper (15,000 jobs); cafeteria attendant (4,200 jobs); and packager (3,000 jobs) (AR 320). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from February 1, 2006 (the alleged onset date) through October 12, 2011 (the date of the decision) (AR 320-21).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

**A.  The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician and by improperly assigning improper evidentiary weight to other physicians by blatantly misinterpreting the evidence.**

Plaintiff contends that the ALJ improperly evaluated the opinions of his treating physician, Thomas Cowden, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762,

5

773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when

they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Cowden is plaintiff's treating ophthalmologist. In April 2011, the doctor completed a "Medical source statement of ability to do work-related activities (physical)" (AR 764-69). In this form, the doctor form indicated that plaintiff had no exertional impairments (AR 764-69). In a portion of the form entitled "Do any of the impairments affect the claimant's hearing or vision" the doctor indicated "yes"(AR 767). The doctor indicated that plaintiff's impairments affected his vision and that he cannot read very small print (AR 767). However, plaintiff is able to read ordinary newspaper or book print, to view a computer screen and to determine differences in shape and color of small objects such as screws, nuts and bolts (AR 767). The doctor identified plaintiff's medical findings as corneal graft failure right eye and keratoconus of the left eye (AR 767). It appears that the doctor inadvertently checked a box indicating that plaintiff had a hearing impairment present and that he did not "retain the ability to understand simple oral instructions and to communicate simple information (AR 767).

The ALJ addressed this opinion as follows:

In April of 2011, Dr. Cowden, the treating corneal specialist, opined the claimant could continuously lift and carry between 50 and 100 pounds and that he did not require the use of a cane. The claimant was able to use the phone, was unable to read very small print, read ordinary newspaper or book print, view a computer screen, determine differences in shape and color of small objects, shop,

7

travel without assistance, use public transportation, create a simple meal, take care of personal hygiene, and sort, handle, or use paper files (Exhibit 24F).

> I **would** assign this statement significant weight except for an indication in the statement that the claimant does not have the ability to hear and understand simple instructions. The comment on the claimant's ability to hear appears to be a typographical error and is directly contradicted by the claimant's own statement that he uses the telephone and the lack of any hearing related claim. I do not believe that it is necessary to re-contact this source concerning the meaning of this limitation. In addition, the residual functional capacity finding (finding #5) [of the ALJ's decision] includes limitations related to all of the claimant's impairments, including sleep apnea, obesity, and breathing difficulties, which are outside of the area of expertise of ophthalmologist Cowden, a corneal specialist.

(AR 317) (emphasis in original).

Dr. Cowden also provided a narrative opinion on September 1, 2011, which stated in pertinent part as follows:

> Jack Thompson has been my patient since the summer of 2007. He arrived with the diagnosis of keratoconus and glaucoma. Keratoconus is a condition where the cornea has excessive conical shape, reducing vision and causing light sensitivity. The keratoconus was greater on the right and [sic] left eye. He had had multiple procedures elsewhere which were unsuccessful prior to seeking my care. In February 2006, he underwent a primary corneal transplant of his right eye, which ultimately failed. After coming under my care, I did a repeat corneal transplant, but that again failed. His glaucoma procedures also failed, seeking care elsewhere. We are contemplating further surgeries to address his current condition as you intend to restore vision in the right eye. Mr. Thompson is a high-risk patient for repeat corneal failure; however, there may be future surgeries to restore vision in the right eye. His vision is not permanently lost at this point. However, any future additional procedures in the short term would be to reduce the symptoms of pain and light sensitivity. First, Mr. Thompson has considerable pain in his right eye. He consistently describes his discomfort beneath his eyelid as though his eye has a foreign body. This interferes on a daily basis with his concentration and causes tears to form in both his right and left eye. Second Mr. Thompson is extremely sensitive to light. He consistently wears dark sunglasses when outside to shield his eyes from the light. Even indoors he wears his sunglasses unless he is in a darkened room. These symptoms are reasonably explained by Mr. Thompson's condition going back to at least his first corneal transplant, as well as an underlying condition of keratoconus. As a result, if he were to attempt to return to work he would require, in my opinion, the following limitations. He would not be limited in the areas of standing, walking, or lifting. He would be limited to tasks not requiring depth

perception or peripheral vision on his right eye. He would require the option to wear dark glasses to limit the effects of his light sensitivity.

(AR 800-01).

The ALJ addressed the doctor's narrative opinion as follows:

Dr. Cowden's September 2011 statement in exhibit 32F summarizes the claimant's medical history and offers recommendations for proposed restrictions that differ somewhat from the doctor's April 2011 statement. The doctor opined

> He would not be limited in the areas of standing, walking or lifting. He would be limited to task not requiring depth perception of peripheral vision in his right eye. He would require the option to wear dark glasses to limit the effect of his light sensitivity. (Exhibit 32F/2)

The limitations of no depth perception and no peripheral vision of the right eye are effectively included in the residual functional capacity finding of this decision, which assumed no functional use of the right eye. The September 2011 opinion indicates the claimant would require the option to wear dark glasses to limit the effects of his light sensitivity[]. Unfortunately, the term "dark glasses" is not defined. We do not know if the doctor is referring to a normal pair of sunglasses, the "extra" dark sunglasses the claimant obtained online without a prescription, or if he was referring to some other type of "dark glasses" [.] More importantly, the history relied on by the doctor was that the claimant required dark glasses unless he was in a darkened room, which is contrary to the claimant's alleged need for a dark room, dark glasses and a clothing shield.

I also note that the Dr. Cowden's letter dated September 1, 2011 shows that it was faxed from Grand Rapids Ophthalmology's fax number to counsel on September 6, 2011, the day of the hearing (although after the hearing took place) and yet, counsel did not submit it until September 15, 2011.

In view of the all of the foregoing statements, I still assign Dr. Cowden's two statements some weight, but cannot assign either statement controlling weight because of the contradictions, the differences between the claimant's symptomatic complaints related to the doctor versus the alleged symptoms reported at the September 2011 hearing and the prior hearing. Because of the discrepancies in the two sets of limitations, I am less than persuaded by the last minute proposed residual functional capacity statement.

(AR 318-19).

Plaintiff contends that ALJ failed to give good reasons for the weight assigned to Dr. Cowden's opinions. *See Wilson*, 378 F.3d at 545. The Court agrees. With respect to Dr. Cowden's April 2011 form, the ALJ acknowledged that the doctor's "checking off" of the box related to a hearing impairment "appears to be a typographical error" not worthy of re-contacting the doctor. Yet, at the same time, the ALJ cites this "typographical error" as the reason for not assigning "significant weight" to the doctor's opinion. The existence of a known typographical error does not constitute a "good reason" to discount the remainder of a treating physician's opinion, as the ALJ appears to have done. If the ALJ felt that there was a substantive problem with the opinion, then the ALJ could have re-contacted the doctor for an explanation.

In addition, the ALJ discounted the doctor's September 2011 opinion because it "offers recommendations for proposed restrictions that differ somewhat from the doctor's April 2011 statement" (AR 318). However, the ALJ does not identify any such differences. The April 2011 form contained a small area for the doctor to insert "particular medical or clinical findings . . . which support your assessment or any limitations and why the findings support the assessment" (AR 767). As discussed, Dr. Cowden identified two medical findings in the April 2011 opinion, i.e., the corneal graft (right eye) and keracotonus (left eye). While the narrative opinion includes some limitations, it was unclear how the doctor would place those restrictions on the limited space provided in the medical source statement.

The ALJ also expressed some confusion over Dr. Cowden's references to plaintiff's use of the term "dark glasses." However, later in the opinion, the ALJ understood that term to mean "sunglasses", stating in pertinent part:

> The State Agency physician's opinion, the expert testimony of the medical expert at the April 2009 hearing, and the opinion of the consultative ophthalmologist

10

> do not require the claimant to sit in a room and do nothing as the claimant alleged
> at the hearing. Dr. Cowden's more restrictive residual functional capacity statement
> from September 2011 provides for the use of sunglasses, but it did not indicate that
> the claimant must be in a darkened room.

(AR 319). If the ALJ needed more information about the type of "dark glasses" that plaintiff required, she could have re-contacted Dr. Cowden, although it seems like a distinction without a difference. In July, 2011, e.g., Dr. Bruce D. Dragoo had used the term, "dark sun glasses." See footnote 2, *infra*.

       The ALJ also expressed concern over the method by which the doctor's opinion reached the ALJ. By way of background, at the hearing, plaintiff's counsel told the ALJ that he had not received an anticipated assessment of work limitations from Dr. Cowden (AR 331-33). At the end of the hearing, the ALJ allowed counsel seven days to submit the record (AR 392). Although Dr. Cowden's letter was sent to the ALJ after the seven day deadline, the ALJ received it in time to incorporate it into the decision. While the Dr. Cowden's narrative opinion was not delivered to the ALJ in a timely fashion, this fact, in and of itself, is not sufficient to discredit the *substance* of the doctor's opinion.[2]

---

[2] Plaintiff points out that the ALJ and the Appeals Council missed an obvious error made by Bruce D. Dragoo, M.D., an examining ophthalmologist. In an three sentence opinion dated July 5, 2011, Dr. Dragoo opined that:

> Mr. Thompson has a very significant photophobia of his right eye secondary to the
> corneal pathology. He probably could function with the left eye totally patched. Otherwise
> he needs a darkened room or dark sun glasses to function.

(AR 782). The ALJ assigned great weight to Dr. Dragoo's opinion, stating that it was "used to assist in framing the claimant's found residual functional capacity" (AR 319), even though Dr. Dragoo mistakenly referred to patching plaintiff's left eye, rather than his right eye. The Appeals Council declined to review the ALJ's decision, but found harmless error. The Appeals Council found Dr. Dragoo's error to be "an obvious error in that the claimant has no vision in his right eye and it would follow that Dr. Dragoo mistakenly wrote the left eye instead of the right" and that the ALJ's assignment of great weight to this opinion was harmless error "as it is inconceivable that Dr. Dragoo would state the claimant could function with essentially no vision in the right eye and the left eye completely patched and covered" (AR 287). Plaintiff complains that the

11

The ALJ did not give "good reasons" for the weight assigned to Dr. Cowden's opinions from April and September 2011. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Cowden's opinions.

> **B. The ALJ committed reversible error by using improper boilerplate language to support her RFC findings.**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints

---

Appeals Council treated Dr. Dragoo's error with leniency but found no error in the ALJ's rejection of Dr. Cowden's opinion. However, the Appeals Council's decision not to accept jurisdiction of plaintiff's appeal is not reviewable in this Court. When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff contends that the ALJ used flawed "boilerplate language" to evaluate his credibility, when the ALJ stated that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 316-17). Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

13

Notwithstanding the Seventh Circuit's criticism of this "opaque boilerplate," *id.* at 644, the Court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Thus, the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting plaintiff's credibility. Examples of the ALJ's reasons include the following:

> The claimant has sought and received rather infrequent treatment for his impairments other than his vision, which is clearly his major impairment. Even the treatment for vision problems has been infrequent. . . Claimant's statement that Flexeril makes him sleepy in the daytime is curious in that he also stated that he has insomnia at night and the Flexeril is not sufficient to make him sleepy at nighttime.
>
> While the claimant has a significant visual impairment, the record as a whole does not support (or even remotely suggests) that the claimant's vision is nearly as limited as the claimant has alleged or that his vision difficulties reasonably restrict his functioning as much as alleged. The claimant's ability to pass the vision portion of the state driving test as recently as June 2011 completely undercuts his claim that he cannot see out of his left eye sufficiently, that he has developed photophobia in the left eye, or that the combined visual impairment of both eyes renders him unable to do anything.

(AR 317). Accordingly, this claim of error is denied.

### C. The ALJ committed reversible error by failing to follow the accurate testimony of the vocational expert.

Plaintiff contends that the ALJ did not accept accurate testimony from the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and*

14

*Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

Here, the ALJ posed a hypothetical question to the VE which reflected the RFC determination (AR 313-14, 385-86). Both the RFC determination and the hypothetical question were based, in part, upon the ALJ's review of Dr. Cowden's opinions. However, as discussed, *supra*, the Court has concluded that a reversal and remand under sentence four is in order because the ALJ erred in evaluating the doctor's opinions. Because the hypothetical question posed to the VE carried forward these same infirmities, the Commissioner should re-evaluate the vocational evidence at the fifth step of the sequential process.

## IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the opinions of plaintiff's treating physician, Dr. Cowden, as well as the vocational evidence at the fifth step of the sequential process. A judgment consistent with this opinion shall be issued forthwith.

Dated: March 31, 2014 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge